UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

JASON YEARICK
12020 NESTER LANE
LUSBY, MD 20657

    *Plaintiff*,

v.

KIMBALL CONSTRUCTION CO., INC.
9615 PHILADELPHIA RD
BALTIMORE, MD 21237

    Serve:  John Kurk Walton
              9615 Philadelphia Rd
              Baltimore, MD 21237

    *Registered Agent*

    *Defendant*.

Civil Action No.: 1:23-CV-2540

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff Jason Yearick ("Plaintiff" or "Yearick"), by and through his attorneys, the Employment Law Center of Maryland, for his Complaint of retaliation against Kimball Construction Co., Inc. ("KCC") alleges, on knowledge as to his own actions, and otherwise upon information and belief, as follows:

**JURISDICTION**

1.  This Court has federal question jurisdiction under 28 U.S.C. § 1331, in that this civil action for retaliation arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., ("FLSA").

1

## VENUE

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), in that

Defendant Kimball Construction Company, Co., Inc., resides in this district.

3.      Venue is further proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that

a substantial part of the events giving rise to this civil action occurred in this district.

## ADMINISTRATIVE EXHAUSTION

4.      The FLSA does not require the exhaustion of administrative remedies prior to the

filing of a civil action. 29 U.S.C. § 216(b).

## TIMELINESS

5.      As Yearick has alleged a willful violation of the FLSA pursuant to 29 U.S.C.A. §

255(a), his FLSA claim is subject to a three-year statute of limitations.

6.      Yearick's FLSA action accrued as of his August 15, 2022, termination;

accordingly, Yearick's FLSA claim is timely.

## PLAINTIFF

7.      Yearick was an "employee" of Defendant, as defined by 29 U.S.C.A. § 203.

8.      Yearick is a resident of Calvert County, Maryland.

9.      Yearick resided in Calvert County, Maryland, during his employment with KCC.

## DEFENDANT

10.     KCC is a Maryland corporation registered to do business under Maryland

Department of Assessments & Taxation Identification Number D00318162.

11.     KCC is an "employer" as defined by 29 U.S.C.A. § 203.

12.     KCC is a general contracting company headquartered in Baltimore, Maryland.

**FACTS**

13.    On or about September 22, 2021, KCC hired Yearick as a Superintendent.

14.    Yearick oversaw all day-to-day activities including operations, safety matters, budgeting, and scheduling for all subcontracting projects.

15.    Yearick earned an excellent reputation among his colleagues and supervisors who described Yearick as a man with integrity, honesty, and outstanding work ethic and attitude.

16.    On or about August 10, 2022, Yearick was involved in a severe car accident.

17.    Soon after the collision, Yearick began to develop intense physical pain and symptoms of emotional distress; including loss of sleep, anxiety, and emotional instability as a result of the car accident.

18.    Yearick continued to report to work for his regularly scheduled shifts immediately after the car accident on August 11, 2022, and August 12, 2022, despite his physical pain and emotional distress.

19.    After completing his shift on Thursday, August 11, 2022, Yearick obtained a doctor's note to report to work with a temporary restriction on driving.

20.    On Friday, August 12, 2022, Yearick's supervisors, Robert McFaul ("McFaul") and Jerry Higdon ("Higdon") instructed Yearick to work a portion of his time from home due to Yearick's restrictions.

21.    Yearick worked his regularly scheduled hours from home and logged those hours in KCC's payroll system.

22.    On or about Monday, August 15, 2022, Human Resources Director Rebecca Pennington ("Pennington") requesting a meeting with Yearick.

23.    Higdon contacted Yearick and told Yearick to see Pennington.

24.    During the meeting, Pennington told Yearick that KCC would not approve and pay Yearick's wages for the hours Yearick worked on Thursday (August 11, 2022) and Friday (August 12, 2022).

25.    Pennington stated that KCC would instead apply Yearick's accrued vacation and sick time to the hours he worked on August 11, 2022, and August 12, 2022.

26.    Pennington's decision to withhold Yearick's wages was extraordinary.

27.    Instead of having a conversation with Yearick about his hours, Pennington made a unilateral decision not to approve Yearick's hours and withhold his wages.

28.    Yearick, who worked hours and earned wages on August 11, 2022, and August 12, 2022, confronted Pennington and protested her decision not to pay Yearick for his work.

29.    KCC, through Pennington, terminated Yearick's employment the same day after Yearick protested the non-payment of his wages on August 15, 2022.

30.    Pennington did not consult with Yearick's supervisors about Yearick's termination.

31.    After Yearick's termination, McFaul stated he did not agree with Yearick's termination, and felt that Yearick's termination was unwarranted.

32.    Since his car accident on August 10, 2022, Yearick has developed a worsening unspecified lumbago with sciatica, which is characterized by pain radiating from his upper neck, spine, and lower back down to the leg and foot allowing for constant headaches as a result of injuries sustained from the accident.

33.    Yearick's retaliatory termination caused him to sustain damages in the form of lost wages, emotional distress, expenses, and attorney's fees and costs connected with this action.

## COUNT I
### *Retaliation*
### Fair Labor Standards Act
### 29 U.S.C. § 215(a)(3)

34. Yearick repeats and realleges the preceding paragraphs hereof, as if fully set forth herein.

35. The FLSA expressly prohibits retaliation by discharging or otherwise discriminating against any employee for asserting their rights under the statute. 29 U.S.C. § 215(a)(3).

36. A plaintiff asserting a claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action. *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 446 (D. Md. 2012) (internal citations omitted).

37. Yearick engaged in protected activity when he protested against the nonpayment of his wages on August 15, 2022.

38. Yearick suffered an adverse action by KCC on August 15, 2022, when KCC terminated his employment.

39. A causal connection exists between Yearick's protected activity and his termination, which took place immediately after his protected activity.

40. Yearick sustained damages as a including loss of wages, compensatory damages such as emotional distress, and has accrued court costs and attorney's fees as a result of KCC's actions.

41.    KCC's actions were unjustified, and the reason given for his termination were pretextual. Accordingly, KCC's retaliation against Yearick was willful, as contemplated by 29 U.S.C.A. § 255(a).

## PRAYER FOR RELIEF
### (as to all counts)

**WHEREFORE**, Yearick respectfully requests a judgement in excess of seventy-five thousand dollars (**$75,000**), to include:

a.  Accept jurisdiction over this matter;

b.  Award Yearick for his past and future loss of wages and benefits, plus interest;

c.  Award Yearick liquidated damages incurred in connection with this action;

d.  Award to Yearick all costs and reasonable attorneys' fees incurred in connection with this action;

e.  Award Yearick compensatory damages;

f.  Award Yearick punitive damages; and

g.  Grant Yearick such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Yearick demands a jury trial in this action.

Respectfully submitted,


*William E. Chavez*
_____

William E. Chavez
Fed. Bar. Number 30560
EMPLOYMENT LAW CENTER OF MARYLAND
5 Hillcrest Dr, Ste B203
Frederick, MD 21703
(240) 384-5705 (main)
(240) 415-9538 (direct)
wchavez@elcmd.org

*Counsel for Plaintiff Jason Yearick*