IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JASON YEARICK,

    *Plaintiff*,

    v.

KIMBALL CONSTRUCTION CO.,

INC.

    *Defendant*.

Civil Action No. ELH-23-2540

## MEMORANDUM OPINION

Jason Yearick, plaintiff, filed suit against his former employer, Kimball Construction Company, Incorporated ("Kimball"), alleging a violation of the Fair Labor Standards Act ("FLSA"). ECF 1 ("Complaint"). After Kimball moved to dismiss the Complaint (ECF 4, "First Motion"), Yearick filed a First Amended Complaint. ECF 9 ("Amended Complaint").[1] It contains one count. *Id.* In the Amended Complaint, Yearick alleges that Kimball engaged in retaliation, in violation of 29 U.S.C. § 215(a)(3), by firing him after he requested unpaid wages. *Id.* ¶¶ 39–46.

Kimball moved to dismiss the Amended Complaint (ECF 10), supported by a memorandum. ECF 10-1 (collectively, the "Motion"). Yearick opposes the Motion. ECF 11. Kimball replied. ECF 12.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

---

[1] The Amended Complaint supersedes the original Complaint. *See Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021); *Young v. City of Mt. Ranier*, 238 F.3d 567, 573 (4th Cir. 2001). Because the First Motion seeks dismissal of the superseded Complaint, I shall deny the First Motion, as moot.

## I.   Background[2]

Kimball is "a general contracting company . . . ."  ECF 9, ¶ 12.  Kimball "hired Yearick as a Superintendent" on or about September 22, 2021.  *Id.* ¶ 13.  As Superintendent, "Yearick oversaw all day-to-day activities[,] including operations, safety matters, budgeting, and scheduling for all subcontracting projects."  *Id.* ¶ 14.  He "earned an excellent reputation among his colleagues and supervisors[,] who described Yearick as a man with integrity, honesty, and outstanding work ethic and attitude."  *Id.* ¶ 15.

On August 10, 2022, Yearick was involved in a serious car accident "in a company-issued truck."  *Id.* ¶ 16.  "Soon after the collision," Yearick "develop[ed] intense physical pain and symptoms of emotional distress," such as "loss of sleep, anxiety, and emotional instability."  *Id.* ¶ 17.  Despite his physical pain and emotional distress, Yearick completed his shift on August 11, 2022.  *Id.* ¶¶ 18, 19.  But, after Yearick completed "his shift" on August 11, 2022, he "obtained a doctor's note" instructing him "to report to work with a temporary restriction on driving."  *Id.* ¶ 19.

The next day, August 12, 2022, Yearick's supervisors, Robert McFaul and Jerry Higdon, "instructed Yearick to work a portion of his time from home due to Yearick's restrictions."  *Id.* ¶ 20.  "Yearick worked his regularly scheduled hours from home and logged those hours in [Kimball's] payroll system."  *Id.* ¶ 21.

Then, on August 15, 2022, "Human Resources Director Rebecca Pennington . . . request[ed] a meeting with Yearick."  *Id.* ¶ 22.  Higdon, Yearick's supervisor, "told Yearick to see

---

[2] At this juncture, the Court assumes the truth of the factual allegations in the Amended Complaint.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

Pennington." *Id.* ¶ 23. "Higdon informed Yearick that Pennington wasn't going to pay Yearick for the hours he worked and logged on" August 11, 2022, and August 12, 2022. *Id.* ¶ 24.

Yearick then "called Pennington to confront Pennington about her decision to withhold his wages and stated, 'Jerry [Higdon] let me know that you [Pennington] weren't going to pay me for the time I worked Thursday [August 11, 2022] or Friday [August 12, 2022].'" *Id.* ¶ 25. In response, Pennington stated: "'[Y]eah, you weren't working,' or words to that effect." *Id.* ¶ 26. Pennington informed Yearick that Kimball would not pay wages to Yearick for the hours he worked on August 11, 2022, and August 12, 2022. *Id.* Pennington stated that, instead, Kimball "would . . . apply Yearick's accrued vacation and sick time to the hours he worked on August 11, 2022, and August 12, 2022." *Id.* ¶ 27.

Yearick "protested" the nonpayment of his wages. *Id.* ¶ 30. In particular, he stated to Pennington: "'I was directed by my supervisors to go take care of my doctor's visit and wrap everything up from home,' or words to that effect." *Id.* ¶ 31. Yearick "further explained that [he] had even gone to see the damaged company-issued truck in St. Leonard, Maryland to ensure everything was taken care of with respect to the post-collision processing of the vehicle." *Id.* In addition, Yearick told Pennington: "'[S]houldn't I be talking to someone in payroll because who the fuck are you to make the determination to apply my vacation and sick time,' or words to that effect." *Id.* ¶ 32. Yearick also "pointed out the fact [that] Pennington should have spoken with his supervisors to corroborate the fact [that] Yearick worked on" August 11, 2022, and August 12, 2022. *Id.* ¶ 33.

Kimball, "through Pennington, terminated Yearick's employment the same day[,] after Yearick protested the non-payment of his wages on August 15, 2022." *Id.* ¶ 34. However, "Pennington did not consult with Yearick's supervisors about Yearick's termination." *Id.* ¶ 35. In

fact, "[a]fter Yearick's termination, McFaul stated [that] he did not agree with Yearick's termination, and felt that Yearick's termination was unwarranted." *Id.* ¶ 36.

According to plaintiff, since his car accident on August 10, 2022, he "has developed a worsening unspecified lumbago with sciatica, which is characterized by pain radiating from his upper neck, spine, and lower back down to the leg and foot allowing for constant headaches as a result of injuries sustained from the accident." *Id.* ¶ 37. Moreover, "Yearick's retaliatory termination caused him to sustain damages in the form of lost wages, emotional distress, expenses, and attorney's fees and costs connected with this action." *Id.* ¶ 38.

## II.    Standard of Review

A defendant may test the legal sufficiency of a plaintiff's complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide

the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570*; see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n

unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).  But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

When ruling on a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605,

616 (4th Cir. 2020).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*' " *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

It is well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g., De Simone v. VSL Pharmaceuticals*, 36 F.4th 518, 531 (4th Cir. 2022) (recognizing that, generally, new arguments cannot be raised in a reply brief); *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not included in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

### III.    Discussion

### A.

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages . . . oppressive working hours, [and] 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)); *see also McFeeley v. Jackson Street Ent. LLC,* 825 F.3d 235, 240 (4th Cir. 2016) ("Congress enacted the FLSA to protect the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.") (citation and internal quotation marks omitted).  To that end, the FLSA "requires payment of a minimum wage, 29 U.S.C. § 206(a), and limits the maximum working hours an employee may work without receiving overtime compensation, 29 U.S.C. 207(a)." *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015).  "Section 216(b) provides a cause of action for violations of these two provisions, permitting employees to seek damages . . . in 'the amount of their unpaid minimum wages' and (in appropriate circumstances) an equal amount of liquidated damages." *Id.* (quoting 29 U.S.C. § 216(b)).

The FLSA also contains an anti-retaliation provision.  *See* 29 U.S.C. § 215(a)(3).  In particular, "Section 215(a)(3) of the FLSA makes it unlawful for a covered employer to 'discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding.'" *Minor v. Bostwick Laboratories, Inc.*, 669 F.3d 428, 431 (4th Cir. 2012) (quoting 29 U.S.C. § 215(a)(3)).

"A plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (citations omitted).

A "complaint" for purposes of 29 U.S.C. § 215(a)(3) may be oral as well as written. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011). Moreover, "intracompany complaints"—that is, complaints made by an employee to an employer—"may constitute 'fil[ing] any complaint' under § 215(a)(3)." *Minor*, 669 F.3d at 439 (quoting 29 U.S.C. § 215(a)(3)) (alteration in *Minor*).

However, not "every instance of an employee 'letting off steam' to his employer constitutes protected activity." *Minor*, 669 F.3d at 439 (quoting *Kasten*, 563 U.S. at 14). "To the contrary, 'the statute requires fair notice' to employers." *Minor*, 669 F.3d at 439 (quoting *Kasten*, 563 U.S. at 14). "To protect employers from unnecessary uncertainty, 'some degree of formality' is required for an employee complaint to constitute protected activity, 'certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand that matter as part of its business concerns.'" *Minor*, 669 F.3d at 439 (quoting *Kasten*, 563 U.S. at 14). Under the governing standard, "a complaint," whether oral or written, "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14.

**B.**

Defendant urges dismissal of the Amended Complaint on two grounds. ECF 10-1 at 5–7. First, defendant argues that the Amended Complaint "fails to set forth sufficient factual context explaining how [Yearick's] confrontation or protest" with Pennington "evidences 'an assertion of rights protected by the FLSA . . . .'" *Id.* at 6 (quoting *Minor*, 669 F.3d at 439). In defendant's view, plaintiff's statement to Pennington that he should "be talking to someone in payroll because who the fuck are you to make the determination to apply my vacation and sick time" does not constitute an assertion of rights under the FLSA. ECF 10-1 at 6 (quoting ECF 9, ¶ 32). Defendant suggests that the allegations of retaliation in this case are comparable in their lack of detail to certain allegations in *Alvarez-Soto v. B. Frank Joy, LLC*, 258 F. Supp. 3d 615 (D. Md. 2017), which Judge Chuang found insufficient to state a claim of retaliation. In particular, in *Alvarez-Soto*, Judge Chuang partially granted a motion to dismiss a retaliation claim after concluding that the complaint's "general allegation that [defendant] discharged or demoted 'employees who complained'" did not state a plausible claim for relief. *Id.* at 624.

Second, defendant argues that Kimball's "alleged decision to apply accrued vacation and sick time to the hours he worked on August 11, 2022 and August 12, 2022 . . . is simply not actionable [because] complaints about accrued vacation and sick time are not protected under the FLSA." ECF 10-1 at 7. In support, defendant cites *Norcom v. Novant Health, Inc.*, RJC-20-0673, 2022 WL 17170949 (W.D.N.C. Nov. 22, 2022), for the proposition that "the FLSA deals with minimum wages and overtime—not paid vacations." *Id.* at *5; *see* ECF 10-1 at 2. That is, according to defendant, the FLSA neither entitles an employee to vacation pay nor protects an employee from being retaliated against for requesting it. ECF 10-1 at 7 (citing *Morke v. Archer Daniels Midland Co.*, SLC-10-94, 2010 WL 2403776, at *2 (W.D. Wisc. June 10, 2010);

*Arjumand v. Laguardia Assocs., L.P.*, WFK-14-4618, 2015 WL 1470470, at *5 (E.D.N.Y. Mar. 30, 2015)).

Therefore, defendant concludes: "Because the Amended Complaint alleges only that Plaintiff protested Defendant's purported decision to apply Plaintiff's accrued vacation and sick time to the hours he worked on August 11, 2022 and August 12, 2022, '[a] a reasonable employer would not have thought that [plaintiff's] complaints asserted any rights under the FLSA.'" ECF 10-1 at 7 (quoting *Norcom*, 2022 WL 17170949, at *5).

In his Opposition, plaintiff maintains that the Amended Complaint alleges in sufficient detail that Yearick engaged in protected activity under the FLSA. ECF 11 at 5–7. In particular, plaintiff asserts, *id.* at 6–7:

> Plaintiff's [Amended Complaint] alleges that, on a specific date ("[o]n or about Monday, August 15, 2022," Pl.'s FAC at 3, ¶ 22), a specific employee (Plaintiff), called a specific KCC agent (Pennington), to "confront" Pennington for taking a specific action (withholding his wages on specific dates). Pl.'s FAC at 4, ¶ 25. Subsequently, in ¶ 34, Plaintiff's FAC alleges that on a specific date (August 15, 2023), at a specific time ("after Yearick protested the non-payment"), a specific agent of KCC (Pennington), took a specific adverse action against Plaintiff (terminated his employment). Pl.'s FAC at 5, ¶ 35.

In plaintiff's view, the level of detail in these allegations distinguishes them from the allegations in *Alvarez-Soto* that Judge Chuang determined were too general to state a claim for retaliation. ECF 11 at 7. Plaintiff observes that in *Alvarez-Soto*, which involved multiple plaintiffs, Judge Chuang did not dismiss every plaintiff's retaliation claim. *Id.* at 7 (citing *Alvarez-Soto*, 258 F. Supp. 3d at 624). Instead, Judge Chuang concluded that one plaintiff who had "allege[d] that he was demoted after complaining to [his employer] that he was not paid overtime" had sufficiently alleged FLSA retaliation. ECF 11 at 7 (citing *Alvarez-Soto*, 258 F. Supp. 3d at 624). According to plaintiff, the allegations he makes in the Amended Complaint "are akin to"

the allegations in *Alvarez-Soto* that Judge Chuang determined were sufficient to state a claim for retaliation.  ECF 11 at 7.

Plaintiff also argues that defendant mischaracterizes plaintiff's complaints to Pennington as "'complaints about accrued vacation and sick time,' which are not protected under the FLSA." *Id.* at 9 (quoting ECF 10-1 at 7).  Plaintiff acknowledges that the Amended Complaint "does, in the greater context of Plaintiff's factual allegations, refer to Plaintiff's vacation and sick time." ECF 11 at 9.  "However," according to plaintiff, the Amended Complaint "does not allege that Plaintiff complained to Pennington about a denial of payment for accrued vacation or sick time." *Id.*  Instead, plaintiff states that the Amended Complaint alleges that Yearick complained to Pennington "about her decision to withhold his wages."  *Id.* at 10.  In plaintiff's view, this allegation, if proved, would establish that Yearick engaged in protected activity under the FLSA. *Id.*

In its Reply (ECF 12), Kimball maintains that the Amended Complaint does not include "sufficient factual context . . . demonstrating that Plaintiff engaged in protected activity under the FLSA."  *Id.* at 3.  In particular, Kimball asserts that "the Amended Complaint fails to provide the specific language" that, according to Yearick, "constitut[es] protected activity under the FLSA." *Id.* at 3–4.  Therefore, in Kimball's view, the "Court is left to speculate regarding the meaning of the conclusory 'protest'" Yearick made to Pennington.  *Id.* at 3.

Kimball also renews its argument that Yearick's complaints to Pennington should be construed as complaints about Pennington's "alleged decision *to apply accrued vacation and sick time* to the hours he worked on August 11, 2022 and August 12, 2022."  *Id.* at 5 (emphasis in original).  It asserts that, because the FLSA does not protect complaints regarding vacation and sick pay, Yearick's alleged complaints do not constitute protected activity under the FLSA.

## C.

As noted, a "plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau*, 515 F.3d at 340.

Defendant does not appear to contest that plaintiff has sufficiently alleged the second and third elements of FLSA retaliation. Instead, defendant argues that dismissal is warranted because plaintiff has failed to allege that "he engaged in an activity protected by the FLSA." ECF 10-1 at 5–7.

The payment of a minimum wage is a right protected by the FLSA. *See* 29 U.S.C. § 206(a). The allegations in the suit, discussed below, reflect that plaintiff sought payment of wages to which he believed he was entitled. In my view, plaintiff has sufficiently alleged that, by requesting unpaid wages, he engaged in activity protected by the FLSA.

An oral, intracompany complaint qualifies as protected activity only if it is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14; *see Minor*, 669 F.3d at 439. According to the Amended Complaint, after plaintiff was advised that he would not receive pay for work completed on August 11, 2022, and August 12, 2022, ECF 9, ¶ 24, plaintiff "called Pennington to confront [her] about her decision to withhold his wages." *Id.* ¶ 25. Plaintiff then informed Pennington that he was told by his supervisors that Pennington was not going to pay him for the time that he worked on August 11, 2022, and August 12, 2022. *Id.* Yearick also stated to Pennington: "'[S]houldn't I be talking to someone in payroll

13

because who the fuck are you to make the determination to apply my vacation and sick time.'" *Id.* ¶ 32.

Pennington, the "Human Resources Director," presumably had some authority regarding the issue of pay. "[I]n light of both content and context," Yearick's statements to Pennington can be reasonably understood as demands for unpaid wages. *Kasten*, 563 U.S. at 14.

Yearick complained to Pennington that she was not "going to pay [him] for the time [he] worked." ECF 9, ¶ 25. In the light most favorable to plaintiff, that statement manifests Yearick's concern that Kimball would not pay plaintiff wages to which plaintiff believed he was entitled. Moreover, Pennington's alleged response—"yeah, you weren't working"—suggests that she understood Yearick to have asserted an entitlement to pay. *Id.* ¶ 26.

In addition, Yearick allegedly told Pennington that he should "be talking to someone in payroll" about "the determination to apply . . . vacation and sick time" rather than pay him regular wages. *Id.* ¶ 32. Again, in the light most favorable to plaintiff, this statement suggests that plaintiff objected to the determination to apply his vacation and sick time rather than pay him regular wages.

Moreover, it is clear from the context of Yearick's interaction with Pennington that their discussion concerned the nonpayment of wages. In particular, their discussion occurred after Pennington requested a meeting with Yearick specifically to inform him that he would not receive wages for work that he completed on August 11, 2022, and August 12, 2022. *See id.* ¶¶ 22–25.

Defendant's invocation of the rule that the FLSA does not provide protection for complaints about the denial of vacation pay is misplaced. *See* ECF 10-1 at 7. According to the Amended Complaint, Yearick objected to the fact that, instead of receiving the regular wages to which he believed he was entitled, he received pay deducted from his vacation allowance. *See*

ECF 9, ¶ 32.  Therefore, Yearick's objection is most fairly characterized as an objection to the denial of regular wages, not as an objection to the denial of vacation pay.

I see no basis for defendant's assertion that the Amended Complaint does not identify "the specific language . . . constituting protected activity under the FLSA."  ECF 12 at 4. In fact, as noted, the Amended Complaint alleges that Yearick stated to Pennington: "'Jerry [Higdon] let me know that you [Pennington] weren't going to pay me for the time I worked . . . .'" ECF 9, ¶ 25.  In addition, the Amended Complaint alleges that "Yearick told Pennington, '[S]houldn't I be talking to someone in payroll because who the fuck are you to make the determination to apply my vacation and sick time.'"  *Id.* ¶ 32.

In sum, I conclude that Yearick has adequately alleged that he engaged in activity protected by the FLSA.

As noted, defendant does not appear to dispute that Yearick adequately alleged the second and third elements of the prima facie case of FLSA retaliation:  that "(2) [plaintiff] suffered adverse action by the employer subsequent to or contemporaneous with . . . protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau*, 515 F.3d at 340.

In any event, I am satisfied that plaintiff has adequately alleged these elements.  Plaintiff's statement that Kimball "terminated [his] employment the same day after Yearick protested the non-payment of his wages on August 15, 2022," is sufficient as an allegation of adverse action. ECF 9, ¶ 34.  And, plaintiff's statement that he was terminated almost immediately after protesting the nonpayment of wages, *id.*, suffices to allege that "a causal connection exists between the employee's activity and the employer's adverse action."  *Darveau*, 515 F.3d at 340; *see Alvarez-*

*Soto*, 258 F. Supp. 3d at 624 (inferring causation from allegation that demotion occurred "[a]fter" complaint about nonpayment of overtime wages) (alteration in *Alvarez-Soto*).

Therefore, I am satisfied that plaintiff has stated a claim for retaliation, in violation of the FLSA.

### IV.    Conclusion

For the reasons stated above, I shall deny the Motion.

An Order follows, consistent with this Memorandum Opinion.


Date: December 21, 2023                                _____/s/_____
                                                       Ellen Lipton Hollander
                                                       United States District Judge